CASEY R. FRONK (Illinois State Bar No. 6296535)
*ADMITTED PRO HAC VICE*
FronkC@sec.gov
TRACY S. COMBS (Cal. Bar No. 298664)
CombsT@sec.gov
Counsel for Plaintiff
U.S. Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101-1950
Tel.: (801) 524-5796
Fax: (801) 524-3558

Local Counsel:
AMY JANE LONGO (Cal. Bar No. 198304)
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Email: LongoA@sec.gov
Phone: (323) 965-3835
Fax: (213) 443-1904

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>GREGORY LAMONT DRAKE, an individual; STEPHEN KENNETH GROSSMAN, an individual; STEPHEN SCOTT MOLESKI, an individual; JASON DAVID ST. AMOUR, an individual; and DAVID ALAN WOLFSON, an individual,<br><br>Defendants. | Case No. 2:20-cv-00405-MCS-PLA<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR MONETARY REMEDIES AS TO DEFENDANT GROSSMAN**<br><br>Date: September 20, 2021<br>Time: 9:00 am<br>Place: First Street Courthouse<br>Courtroom 7C<br>350 W. 1st Street, Los Angeles, CA<br>Before: Hon Mark C. Scarsi |

# TABLE OF CONTENTS

I. DISGORGEMENT AND PREJUDGMENT INTEREST ARE APPROPRIATE ........................................................2

    A. Grossman Is Barred from Challenging the Court's Ability to Order a Disgorgement Remedy ........................................2

    B. The Commission Has "Statutory Authorization" to Seek a Disgorgement Remedy ........................................................3

    C. The Commission's Proposed Disgorgement Remedy is Consistent with *Liu* ..........................................................4

        1. The Commission's Proposed Disgorgement Is Based on Grossman's Net Profits ........................................4

        2. The Commission's Proposed Disgorgement Remedy Is "for the Benefit" of Investors ..................................7

II. A CIVIL PENALTY IS WARRANTED ........................................................9

CONCLUSION ........................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Kansas v. Nebraska*
    574 U.S. 445 (2015)..................................................................................5, 6

*Kokesh v. SEC*
    137 S. Ct. 1635 (2017)..................................................................................3

*Liu v. SEC*
    140 S. Ct. 1936 (2020).......................................................... 2, 3, 4, 5, 6, 7, 9

*Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*
    467 F.3d 73 (2d Cir. 2006) ............................................................................5

*Root v. Railway Co.*
    105 U.S. 189 (1882)......................................................................................5

*SEC v. Almagarby*
    No. 17-62255-CIV (S.D. Fla.)...................................................................6, 9

*SEC v. Bhagat*
    No. C-01-21073, 2008 WL 4890890 (N.D. Cal. Nov. 12, 2008)..................5

*SEC v. BIC Real Estate Dev. Corp.*
    No. 1:16-cv-00344, 2017 WL 1740136 (E.D. Cal May 4, 2017) ..................5

*SEC v. Blackburn*
    No. 15-2451, 2020 WL 10787527 (E.D. La. Nov. 3, 2020) ..........................6

*SEC v. First Pac. Bancorp.*
    142 F.3d 1186 (9th Cir. 1998) ....................................................................4, 5

*SEC v. Fischbach Corp.*
    133 F.3d 170 (2d Cir. 1997) ..........................................................................5

*SEC v. Huffman*
    996 F.2d 800 (5th Cir. 1993) .........................................................................6

*SEC v. Levin*
    849 F.3d 995 (11th Cir. 2017) .......................................................................5

*SEC v. Liu*
  No. SACV 16-00974-CJC (AGRx), 2021 WL 2374248
  (C.D. Cal. June 7, 2021) ........................................................................................4

*SEC v. Lund*
  570 F. Supp. 1397 (C.D. Cal. 1983) ....................................................................8, 9

*SEC v. Platforms Wireless Int'l Corp.*
  617 F.3d 1072 (9th Cir. 2010) ...........................................................................4, 5

*SEC v. Westport Capital Markets, LLC*
  No. 3:17-cv-02064, 2021 WL 2801626 (D. Conn. July 6, 2021) ...................5

*SEC v. Yang*
  824 Fed. Appx. 445 (9th Cir. Aug. 6, 2020) .......................................................4

**FEDERAL STATUTES**

National Defense Authorization Act ("NDAA"), Section 6501 ...........................3, 4

**Securities Exchange Act of 1934**

Section 10(b) [15 U.S.C. § 78j(b)] ..............................................................................10

Section 15(a)(1) [15 U.S.C. § 78o(a)(1)] ........................................................... 1, 2, 3

Section 21(d) [15 U.S.C. § 78u(d)] ................................................................................3

Section 21(d)(3) [15 U.S.C. § 78u(d)(3)] .....................................................................9

Section 21(d)(3)(B)(i) [15 U.S.C. § 78u(d)(3)(B)(i)] .................................................10

Section 21(d)(5) [15 U.S.C. § 78u(d)(5)] .................................................................2, 3

Section 21(d)(7) [15 U.S.C. §78u(d)(7)] .....................................................................4

In his Opposition (Dkt. No. 81) to Plaintiff Securities and Exchange Commission's ("Commission") motion for disgorgement and civil penalties (Dkt. No. 78), Defendant Stephen Kenneth Grossman ("Grossman") does not contest—because he cannot—that he violated Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)] by working as a telephone solicitor in Defendant David Wolfson's ("Wolfson's") fraudulent matched-trading operation, which was designed to manipulate the market for dozens of microcap securities. Nor does he contest that he obtained at least $289,078.74 in net profits (via commissions) for working as an unregistered broker in Wolfson's boiler-room operation; that he previously worked in at least two other, similar stock solicitation enterprises before starting at Wolfson's; that he was not only a "worker bee" but a manager of one of Wolfson's boiler rooms; and that he attempted to continue working as a (registered) broker after Wolfson scrapped his operation, and only left that employment when he became worried about the Commission's investigation.

Rather than raise a factual challenge to the Commission's motion for monetary relief, Grossman relies primarily on two legal arguments. Grossman contends that because the Commission purportedly cannot identify the investors who Grossman solicited and prove how much money each of those investors lost on their trades, the Court cannot award *any* disgorgement or prejudgment interest. Grossman further claims that because his conduct, as pled, was not as egregious as certain of his co-defendants, the Court should not award a significant civil penalty.

As discussed below, Grossman's contention that the Court may not award any disgorgement is barred by the consent judgment he signed and agreed to, and in any event misapprehends the law, which permits the Commission to seek a disgorgement remedy in the amount of the defendant's ill-gotten gains without first identifying a loss to a particular victim. Likewise, Grossman's claim that the Court may not award a significant civil penalty does not comport with his substantial role in Defendants' matched-trading scheme.

## I. DISGORGEMENT AND PREJUDGMENT INTEREST ARE APPROPRIATE.

"A disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020). Grossman does not dispute that the Commission's calculation of the net profits he obtained for violations of Section 15(a)(1)—$289,078.74—is accurate. (*See* Opposition ("Opp."), Dkt. No. 81 at 4.) He likewise does not contest that the Commission's calculation of the pre-judgment interest that would be owed on such disgorgement amount ($49,515.71) is accurate. (*Id*.) Grossman argues, however, that the Court cannot order any disgorgement because (1) the Commission lacks "statutory authorization" for a disgorgement remedy; and (2) the Commission, after *Liu*, cannot seek a disgorgement remedy without first identifying the harmed investors and "showing a loss to a victim." These arguments are barred by the consent judgment against Grossman (Dkt No. 76) and, in any event, are contrary to law.

### A.   Grossman Is Barred from Challenging the Court's Ability to Order a Disgorgement Remedy.

As an initial matter, Grossman is barred from raising arguments as to the propriety of any disgorgement remedy. That is, Grossman has consented to a judgment precluding him from arguing that the Court is not permitted to award ***any*** disgorgement or prejudgment interest. Pursuant to Section III of the Judgment as to Defendant Stephen Kenneth Grossman (Dkt. No. 76), to which Grossman consented (*see* Dkt. No. 75), the Court ordered: "Defendant ***shall pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty***" and "[t]he Court shall determine ***the amounts*** of the disgorgement and civil penalty upon motion of the Commission." (*Id*., Judgment at § III (emphasis added).)[1] Thus, by its plain terms, the Judgment precludes Grossman from arguing

---

[1] Likewise, Grossman is precluded from challenging the validity of the consent

that the Commission lacks authority to seek any disgorgement here, or that Supreme Court precedent prevents the Court from awarding any disgorgement for Grossman's violations of Section 15(a)(1). Any such arguments Grossman may have had were waived when he consented to entry of that Judgment, and cannot be litigated here. Because Grossman does not dispute the "amount[ ] of the disgorgement" (*see* Dkt. No. 76, Judgment at § III), that should be the end of the matter, and the Court should award the Commission's requested disgorgement and prejudgment interest.

### B. The Commission Has "Statutory Authorization" to Seek a Disgorgement Remedy.

Even if Grossman could object to the Court's ability to award disgorgement (and he cannot), there is no basis for Grossman's assertion that the Commission lacks "statutory authorization" to pursue a disgorgement remedy (*see* Dkt. No. 81, Opp. at 5). As the Supreme Court held in *Liu*—which resolved the question of the Commission's authority to obtain disgorgement raised by some defendants following *Kokesh v. SEC*, 137 S. Ct. 1635 (2017)— "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78u(d)(5)." *Liu*, 140 S. Ct. at 1942. The Supreme Court in *Liu* specifically rejected the very argument Grossman makes here—that "[the] Court effectively decided in *Kokesh* that disgorgement is necessarily a penalty, and thus not the kind of relief available at equity." *Liu*, 140 S. Ct. at 1946. "Not so," said the Court. *Id*.

Furthermore, on January 1, 2021, Congress passed the National Defense Authorization Act ("NDAA"), Section 6501 of which amended Section 21(d) of the Exchange Act to expressly authorize the Commission, in actions filed in federal

---

judgment. (*See* Dkt. No. 76, Judgment at § III ("In connection with the Commission's motion for disgorgement and/or civil penalties, and at any hearing held on such a motion . . . Defendant may not challenge the validity of the Consent or this Final Judgment.").)

3

district court, to seek "disgorgement." *See* NDAA § 6501(a); 15 U.S.C. §78u(d)(7) (as amended) ("In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement."). Congress made clear that this statutory authorization for disgorgement applies to "any action or proceeding that is pending on, or commenced on or after, the date of enactment" of the NDAA. *See* NDAA § 6501(b). As this case was pending as of January 1, 2021, the NDAA's statutory authorization specifically applies, and belies Grossman's claim that "the lack of statutory authorization for disgorgement means the Commission cannot seek that additional remedy." (Opp. at 5.)

    **C.    The Commission's Proposed Disgorgement Remedy is Consistent with *Liu*.**

Likewise, and even if he were not barred from challenging the Court's ability to award disgorgement, there is no legal basis for Grossman's contention that the Commission may not seek a disgorgement remedy without first identifying and "showing a loss to a victim." (Opp. at 7.) That is because (1) disgorgement is measured by a defendant's net profits, not investor losses; and (2) the Commission's proposed disgorgement remedy is for the benefit of investors.

    **1.    The Commission's Proposed Disgorgement Remedy Is Based on Grossman's Net Profits.**

It is settled law that the Commission is entitled to disgorgement upon producing a reasonable approximation of a defendant's ill-gotten gains. *See SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First Pac. Bancorp.*, 142 F.3d 1186, 1191 (9th Cir. 1998)); *SEC v. Yang*, 824 Fed. Appx. 445, 447 (9th Cir. Aug. 6, 2020) (applying reasonable approximation standard after *Liu*); *see also SEC v. Liu*, No. SACV 16-00974-CJC (AGRx), 2021 WL 2374248 (C.D. Cal. June 7, 2021) (applying *Liu* and granting the Commission's motion for disgorgement of defendants' net profits from their

4

illegal activities). Indeed, courts have long rejected defendants' attempts to restrict disgorgement to investor losses.[2] That is because "[d]isgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating the securities laws by making violations unprofitable." *First Pacific Bancorp*, 142 F.3d at 1191; *see also Platforms Wireless*, 617 F.3d at 1097 ("[T]he purpose of a disgorgement remedy is to prevent unjust enrichment and to make securities law violations unprofitable, not to compensate victims.").

These principles were reaffirmed in *Liu*, where the Supreme Court made clear that a defendant's "net profits" are the appropriate measure for disgorgement. As the Court stated, "[e]quity courts have routinely deprived wrongdoers of their net profits from unlawful activity," reflecting "a foundational principle" that "it would be inequitable that a wrongdoer should make a profit out of his own wrong." *Liu*, 140 S. Ct. at 1942–43, quoting *Root v. Railway Co.*, 105 U.S. 189, 207 (1882) (alterations omitted).[3] Thus, following *Liu*, courts have continued to reject efforts to calculate disgorgement based on a loss to investors rather than the illegal gains of a defendant. *See, e.g.*, *SEC v. Westport Capital Markets, LLC*, No. 3:17-cv-02064, 2021 WL 2801626, *7 (D. Conn. July 6, 2021) ("'[I]nvestor loss' is not the

---

[2] *See, e.g.*, *Kansas v. Nebraska*, 574 U.S. 445, 463 (2015) (ordering disgorgement that exceeded the victim's "actual damages"); *Official Comm. of Unsecured Creditors of WorldCom, Inc. v. SEC*, 467 F.3d 73, 81 (2d Cir. 2006) ("Given that compensation of fraud victims is a 'secondary goal,' the size of a disgorgement order 'need not be tied to the losses suffered by defrauded investors.'") (quoting *SEC v. Fischbach Corp.*, 133 F.3d 170, 175–76 (2d Cir. 1997); *SEC v. Bhagat*, No. C-01-21073, 2008 WL 4890890, *1 (N.D. Cal. Nov. 12, 2008) ("[D]isgorgement is not restitution either, meaning that it need not compensate investors."); *see also SEC v. BIC Real Estate Dev. Corp.*, No. 1:16-cv-00344, 2017 WL 1740136, * (E.D. Cal May 4, 2017) (rejecting claim that the Commission must itemize "investor losses" to determine ill-gotten gains for purposes of imposing a civil penalty); *SEC v. Levin*, 849 F.3d 995, 1006 (11th Cir. 2017) (affirming disgorgement award because "the district court properly based the disgorgement upon Levin's gains and not the investors' losses").

[3] *Liu*'s focus on ensuring adequate consideration of legitimate offsets for business expenses, 140 S. Ct. at 1946, further underscores that quantifying disgorgement focuses on the defendants' profits, not investor losses. If the focus were on quantifying losses, there would be no need to consider business expense offsets because they would not be relevant to that calculation.

5

proper measure for disgorgement; as the Supreme Court made clear in *Liu*."); *SEC v. Almagarby*, No. 17-62255-CIV (S.D. Fla.) (Aug. 16, 2021 Report and Recommendation) (attached hereto as Exhibit 1) ("The undersigned agrees with the SEC that disgorgement is measured by Defendant's profits and not investor losses."). Thus, it is no matter if "[t]he Commission has not shown a loss to a victim."[4] (Opp. at 7.)

Furthermore, *Liu* opined that it remained "an open question whether, and to what extent that practice [*i.e.*, depositing disgorgement funds with the Treasury where a distribution to investors is infeasible] nevertheless satisfies the SEC's obligation to award relief 'for the benefit of investors' and is consistent with the limitations of § 78u(d)(5)." *Liu*, 140 S. Ct. at 1948. If, as Grossman argues, *Liu* required the Commission to quantify investor losses and to identify the specific victims, there would not have been any "open question." Nothing in *Liu* requires the Commission to undertake the significant burden of identifying individual harmed investors or quantifying their losses before disgorgement is awarded or collected. *See SEC v. Blackburn*, No. 15-2451, 2020 WL 10787527, *3 (E.D. La. Nov. 3, 2020) ("To be sure, [*Liu*] did not create a rule requiring all disgorged funds be returned to investors or that a disgorgement award be limited to those funds that could be returned to investors.").

Grossman claims that language in the Commission's proposed final judgment is nonetheless contrary to *Liu* because it treats disgorgement as a penalty,

---

[4] This is not a private action subject to proof of damages. Because disgorgement is measured by a violator's "wrongful gains" as opposed to the victim's damages, *Liu*, 140 S. Ct. at 1944, disgorgement can be ordered in an amount that is different from, or even exceed the victim's loss. *See Kansas*, 574 U.S. at 463 (ordering disgorgement that exceeded the victim's "actual damages"); *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993) ("[A] disgorgement order might be for an amount more or less than that required to make the victims whole.") If not for Grossman's illegal broker activities, the investors who unwittingly purchased microcap securities subject to a matched-trading scheme would not have bought those new securities ***from Grossman***, and Grossman would not have obtained his commission profits on their trades.

but this argument depends on a misreading of the proposed judgment. Grossman suggests that the proposed judgment defines disgorgement as a "penalty paid to the government for all purposes, including all tax purposes." (Opp. at 8.) But Grossman omits the pertinent language of that provision, which specifically refers to "*civil penalties*"—*not disgorgement*. In full:

> Regardless of whether any such Fair Fund distribution is made, **amounts ordered to be paid as civil penalties** pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including for tax purposes.

(Dkt. No. 78-2, Proposed Final Judgment at § VI (emphasis added).) Grossman's "quote" of this provision omits the relevant highlighted language, which makes clear that the provision does not apply to the proposed disgorgement remedy, only to any civil penalties awarded by the Court. Thus, there is no inconsistency between *Liu* and the Commission's proposed final judgment.

### 2. The Commission's Proposed Disgorgement Remedy Is "for the Benefit" of Investors.

Finally, there is no merit to Grossman's suggestion that the Commission cannot show that the proposed disgorgement remedy is "for the benefit of investors" pursuant to *Liu* without first identifying both the investors and their losses. (*See* Opp. at 7 ("[T]he Commission has not shown and probably cannot show that any of the so-called net profits are going to be returned to the investors.").) That is not the law.

*Liu* noted that under the text of the Exchange Act, equitable relief must be "appropriate or necessary for the benefit of investors.'" *Liu*, 140 S. Ct. at 1947 (*quoting* 15 U.S.C. § 78u(d)(5)). The Court explained that this language "must mean something more than depriving a wrongdoer of his net profits alone" and held that the "equitable nature of the profits remedy generally requires the SEC to return a defendant's gains to wronged investors for their benefit." *Id*. at 1948. "To

the extent that feasibility is relevant at all to equitable principles . . . lower courts are well equipped to evaluate the feasibility of returning funds to victims of fraud." *Id*. n.5 (*citing SEC v. Lund*, 570 F. Supp. 1397, 1404-05 (C.D. Cal. 1983)).[5]

As is clear from the Commission's opening brief, the victims of Grossman's violations can be identified and the Commission intends to return any disgorgement amounts collected to those investors to the extent it is feasible. Both the testimony of Grossman and the declaration of Wolfson make clear that Grossman's and Wolfson's illegal conduct at issue involved the sale of approximately 41 securities, with identifiable names and ticker numbers. (*See* Dkt. 78-2, Fronk Decl. at Ex. A, Declaration of David Wolfson at ¶ 4k; Dkt. No. 49-1, Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Partial Summary Judgment ¶ 27.) As discussed in the attached declaration from Joseph Darragh, attached as Exhibit 2, the investors who purchased these securities during the relevant time period can be identified using data from the FINRA Audit Trail and the Electronic Bluesheet System. It is premature to do that now—identifying the specific investors who will receive money in a distribution should await entry of a judgment specifying the amount of disgorgement. At that point, the amount to be distributed to investors depends in large part on how much can be collected.

Moreover, it is incorrect to suggest that the Commission cannot seek any disgorgement because "[m]atch trading does not necessarily mean a loss to a victim." (Opp. at 7.) The Court need not, at this stage, engage in the exercise proposed by Grossman—namely, calculating the exact losses of each victim. Nor

---

[5] *In Lund*, the district court ordered disgorgement be paid into an escrow account and appointed a magistrate to determine whether it was feasible to identify harmed investors and "make such an award from the escrow account as is fair and equitable." 570 F. Supp. at 1403–05. The district court further ordered that any funds that could not be distributed be paid into the Treasury. *Id*. Thus, in an opinion from this district cited favorably by *Liu*, the court recognized that the identification of victims, the amount of their losses, and the feasibility of a distribution would be decided after disgorgement had been awarded.

is the Commission required to quantify how much of each investor's losses are specifically attributable their transactions with Defendants. At this stage, it is sufficient to establish a class of investors for whose benefit disgorgement is sought, and the Commission has done that. *See Almagarby*, Ex. 1 at 7 ([T]he Supreme Court [in *Liu*] made no ruling, as Defendants suggest, that the SEC must identify specific victims to whom a disgorgement award should be distributed, or that all disgorged funds must be returned to investors, or that a disgorgement award should be limited to those funds that could be returned to investors.").

In any event, Grossman's implication—that investors who unwittingly purchased into a matched trading scheme paying exorbitant commissions were not harmed by at least an undue risk of a declining stock price after the scheme had moved on to "pump and dump" another penny stock—does not comport with common sense. The amount of each investor's personal gain or loss on the stock may depend on when the investor eventually sold the promoted security; but that sale cannot compensate investors from taking on an undisclosed risk that necessarily inflated the price they paid for the security. Thus, the Commission's proposed final judgment requires the Commission to hold all funds paid by Defendants "pending further order of the Court," and provides that the Commission "may propose a plan to distribute [funds] subject to the Court's approval." (Dkt. No. 78-2, Proposed Final Judgment at § VI.) Pursuant to the proposed judgment, the Court will have the ability to supervise the distribution of these funds and, consistent with *Liu*, ensure that disgorged funds are returned to the most direct victims of the violation. This process is reasonable and comports with *Liu*. *See Lund*, 570 F. Supp. at 1403–05; *see also Almagarby*, Ex. 1 at 6–7.

## II. A CIVIL PENALTY IS WARRANTED.

Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3), provides that the Commission may seek civil penalties for violations of the Exchange Act. The amount of any civil penalty "shall be determined by the court in light of the facts

and circumstances." 15 U.S.C. § 78u(d)(3)(B)(i). Grossman asserts that his actions—unlike certain of his co-defendants—are not sufficient to rise to the level of a third-tier penalty, both because he was not charged with a scienter-based violation, and because he cooperated in the investigative and litigation process. (*See* Opp. 2–3, 9–11.) But these are not reasons to impose a lesser penalty.

As discussed at length in the Commission's opening brief, Grossman was not merely a "worker bee" taking orders from Wolfson. He was not naïve as to the matched-trading operation, having previously worked in at least two other similar operations, one headed by his co-defendant Drake. And he did not remain a mere telephone solicitor, but was promoted to a management position where he supervised other unlicensed brokers and was an integral part of Defendants' fraudulent scheme for at least 15 months. Grossman also did not willingly leave Wolfson's employ, but only stopped working as an unlicensed broker when Wolfson shut down the operation upon learning of the Commission's investigation. The fact that Grossman was not charged with a violation of Section 10(b) does not mitigate his continued, reckless participation in what was undeniably a fraudulent scheme—that created significant risk of substantial losses to the solicited investors who purchased the promoted microcap securities at artificially inflated prices.

Grossman also suggests, through an inappropriate reference to settlement communications, that he has acknowledged his violation, is elderly, and does not have the ability to pay disgorgement or a civil penalty. While the ability to pay is one factor that a Court may consider in determining a penalty, it is incumbent on Grossman to provide some support for the claim that he lacks the funds to pay any civil penalty, and he has not provided such evidence to date. Likewise, his repeated failure to participate in this litigation belies his claim that he is now taking responsibility for his violation. Thus, for the reasons discussed in the Commission's opening brief, a third-tier penalty is appropriate here in an amount to be determined in the Court's discretion.

## CONCLUSION

For the reasons discussed herein and in the Commission's opening brief, the Commission requests that the Court enter a final judgment against Grossman in the form attached to the Commission's opening brief (Dkt. No. 78-2.)

Dated: September 7, 2021

/s/ *Casey R. Fronk*
Casey R. Fronk
Tracy S. Combs
Amy J. Longo
*Attorneys for Plaintiff*
*Securities and Exchange Commission*

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

> U.S. SECURITIES AND EXCHANGE COMMISSION
> 351 South West Temple, Suite 6.100
> Salt Lake City, UT 84101-1950
> Tel.: (801) 524-5796; Fax: (801) 524-3558

On September 7, 2021, I caused to be served the document entitled **REPLY IN SUPPORT PLAINTIFF'S MOTION FOR MONETARY REMEDIES AS TO DEFENDANT GROSSMAN** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Salt Lake City, Utah, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Salt Lake City, Utah, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☒ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Salt Lake City, Utah.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: September 7, 2021           */s/ Casey R. Fronk*
                                   Casey R. Fronk

12

*SEC v. Gregory Lamont Drake, et al.*
United States District Court—Central District of California
Case No. 2:20-cv-00405-MCS-PLA

## SERVICE LIST

Via E-Filing Only:

Ronald J. Stauber
Stauber Law Offices
1880 Century Park East, Suite 315
Los Angeles, CA 90067
Ronstauber@stauber.com
*Attorney for Defendant Stephen Kenneth Grossman*

Leonard J. Comden
Wasserman Comden Casselman & Esensten LLP
5567 Reseda Boulevard, Suite 330
P.O. Box 7033
Tarzana, CA 91356
Ljc@leonardjcomdenlaw.com
*Attorney for Defendant Stephen Scott Moleski*

Via UPS Delivery:

David Alan Wolfson
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Los Angeles, CA ▓▓▓▓▓
*Pro Se Defendant*

13