UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>GREGORY LAMONT DRAKE, et al.,<br><br>　　　　　　Defendants. | Case No.: 2:20-cv-00405 MCS (PLAx)<br><br>**ORDER RE: MOTIONS FOR FINAL JUDGMENT AS TO MONETARY REMEDIES [ECF NOS. 78–80]** |

　　　Before the Court are Plaintiff Securities and Exchange Commission's ("SEC") following motions:

- Motion for Final Judgment Ordering Disgorgement of Ill-Gotten Gains, Prejudgment Interest, and a Civil Penalty against Defendant Stephen Kenneth Grossman ("Grossman Mot."), ECF No. 78;
- Motion for Final Judgment Ordering Disgorgement of Ill-Gotten Gains, Prejudgment Interest, and a Civil Penalty against Defendant Stephen Scott Moleski ("Moleski Mot."), ECF No. 79; and

- Motion for Final Judgment Ordering Disgorgement of Ill-Gotten Gains, Prejudgment Interest, and a Civil Penalty against Defendant David Alan Wolfson ("Wolfson Mot."), ECF No. 80.

Defendants Stephen Kenneth Grossman ("Grossman") and Stephen Scott Moleski ("Moleski") filed oppositions and the SEC filed replies. Grossman Opp'n, ECF No. 81; Moleski Opp'n, ECF No. 82; Reply ISO Grossman Mot., ECF No. 83; Reply ISO Moleski Mot., ECF No. 84. Wolfson did not file an opposition. The Court heard oral argument on September 20, 2021. ECF No. 85. For the following reasons, the Court **GRANTS** all three motions.

## I.     BACKGROUND

The SEC filed a Complaint on January 15, 2020 against multiple defendants. *See* Compl., ECF No. 1. Defendants Grossman, Moleski, and Wolfson are three of the defendants ("Defendants"). *Id*. The three Defendants have each consented to the entry of a judgment and the Court entered those judgments. J. as to Defendant David Alan Wolfson ("Wolfson Judgment"), ECF No. 18; J. as to Defendant Stephen Scott Moleski ("Moleski Judgment"), ECF No. 24; J. as to Stephen Kenneth Grossman ("Grossman Judgment"), ECF No. 76. The judgments permanently enjoin the Defendants from violating various federal securities laws and give the Court, upon the SEC's motion, discretion to order disgorgement of ill-gotten gains, prejudgment interest, and a civil penalty. Wolfson Judgment; Moleski Judgment; Grossman Judgment. The judgments also state that the allegations in the Complaint are to be taken as true for the purposes of the SEC's motions. Wolfson Judgment; Moleski Judgment; Grossman Judgment.

According to the Complaint, the Defendants operated and worked in call centers that sold microcap securities as part of a "matched trading scheme." *See* Compl. None of the Defendants registered with the SEC as brokers or dealers and none of the Defendants associated with a registered broker or dealer. *Id*. ¶ 8. Defendant Wolfson "operated four call centers" and hired individuals to "cold call[] prospective investors." *Id*. ¶¶ 18, 20, 25. Defendant Grossman initially "cold called prospective investors" and

later managed one of the call centers. *Id*. ¶¶ 20, 21. Defendant Moleski also initially "cold called prospective investors" and later managed one of the call centers. *Id*. ¶¶ 24–26. The Complaint alleges the following claims against Defendant Wolfson: violations of Section 15(a)(1) of the Exchange Act; violations of Section 17(a)(1) and (3) of the Securities Act; and violations of Section 10(b) of the Exchange Act as well as Rule 10b-5(a) and (c). *Id*. ¶¶ 50–61. The Complaint also alleges that Defendants Grossman and Moleski violated Section 15(a)(1) of the Exchange Act. *Id*. ¶¶ 50–52. According to each judgment, the "allegations of the Complaint shall be accepted as and deemed true" and the Defendants are precluded from arguing that they "did not violate the federal securities laws as alleged in the Complaint." Wolfson Judgment; Grossman Judgment; Moleski Judgment.

## II.    LEGAL STANDARD

"District courts have broad equity powers to order disgorgement of ill-gotten gains obtained through violations of securities laws." *SEC. v. Lyndon*, 39 F. Supp. 3d 1113, 1120 (D. Haw. 2014), *aff'd sub nom. SEC v. Lyndon*, 714 Fed. Appx. 816 (9th Cir. 2018). The Supreme Court recently held that a "disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)." *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020). In entering disgorgement awards, "courts must deduct legitimate expenses" from the amount of potential disgorgement. *Id*. at 1950. The amount of disgorgement need "only [be] a reasonable approximation of profits causally connected to the violation." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1192 n.6 (9th Cir. 1998)). The SEC carries the "burden of persuasion" as to whether the "disgorgement figure reasonably approximates the amount of unjust enrichment." *Id*. (quoting *SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1232 (D.C.Cir.1989)). After the SEC meets this burden, a defendant must then "demonstrate that the disgorgement figure was not a reasonable approximation." *Id*. (quoting *First City Fin.*, 890 F.2d at 1232). Additionally, "[t]he ill-gotten gains include

prejudgment interest to ensure that the wrongdoer does not profit from the illegal activity." *SEC v. Cross Fin. Servs., Inc.*, 908 F. Supp. 718, 734 (C.D. Cal. 1995).

Courts can also assign civil penalties under both the Securities Act and Exchange Act. 15 U.S.C. §§ 77t(d), 78u(d)(3). The Securities Act and Exchange Act have three tiers of penalties. For both the Securities Act and Exchange Act, a third-tier civil penalty applies to violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and the violation must have "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77(t)(d)(2)(C), 78u(d)(3)(B)(iii). The amount for a third-tier civil penalty committed by a natural person is $195,047. *See* Release No. 34-90874, dated January 8, 2021 (effective January 15, 2021); *see also* 17 C.F.R. § 201.1001 (civil monetary penalties are adjusted for inflation). Courts have discretion to set the civil penalty at an amount "equal to the disgorgement amount." *SEC v. Yuen*, 272 Fed. Appx. 615, 618 (9th Cir. 2008). In assigning a civil penalty, courts consider the following factors: "the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of defendant's professional occupation, that future violations might occur; and the sincerity of his assurances against future violations." *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). "A court may also examine a defendant's ability to pay the civil fine in determining the appropriate amount." *SEC v. Mizrahi*, No. CV 19-2284 PA (JEMx), 2020 WL 6114913, at *2 (C.D. Cal. Oct. 5, 2020).

### III. DISCUSSION

The SEC seeks disgorgement and a third-tier civil penalty against all three Defendants. The Court addresses each Defendant in turn.

**A. Stephen Kenneth Grossman**

The SEC seeks disgorgement of $289,078.74 in net profits Grossman received for his unregistered broker activities, $49,515.71 in prejudgment interest, and a third-tier civil penalty. Decl. of James J. Thibodeau ISO Grossman Mot. ¶¶ 5–11, ECF No.

4

78-4; *see also* Grossman Mot. 9–13. Grossman does not dispute the SEC's $289,078.74 compensation estimate. Grossman Opp'n 4. Instead, Grossman disputes the SEC's ability to seek disgorgement, prejudgment interest, and a third-tier civil penalty. *See generally*, Grossman Opp'n.

                    i.        <u>Disgorgement and Prejudgment Interest</u>

Grossman primarily makes three legal challenges to the SEC's ability to seek disgorgement. First, Grossman argues the SEC does not have statutory authority to seek disgorgement. Grossman Opp'n 5, 6. However, the Exchange Act expressly allows the SEC to seek disgorgement. 15 U.S.C. § 78u(d)(3)(A)(ii). Second, Grossman argues that the Supreme Court in *Kokesh v. SEC*, 137 S. Ct. 1635, 1643, 44, 198 L. Ed. 2d 86 (2017) (*Kokesh*) determined disgorgement is a penalty that the SEC cannot seek. *Id*. at 5–9.[1] This is also incorrect. In a case decided after *Kokesh*, the Supreme Court held that "a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)." *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) (*Liu*).[2] Third, Grossman argues that the Supreme Court in *Liu* held the SEC can only seek disgorgement in an amount that equals the "<u>net profits that are returned to victims</u>." Grossman Opp'n 6 (emphasis in original). According to Grossman, the SEC should not be awarded disgorgement because it failed to show Grossman's net profits will be returned to the investors or that any investors suffered losses. *Id*. at 7. However, the Supreme Court did not create any such limitation in *Liu*. *Liu*, 140 S. Ct. at 1948 ("The equitable nature of the profits remedy *generally* requires the SEC to return a defendant's gains to wronged investors for their benefit." (emphasis added)); *see also*

---

[1] Grossman further argues that the SEC's own Proposed Judgment improperly refers to disgorgement as a penalty. Grossman Opp'n 8. It is clear, however, that the language from the SEC's Proposed Judgment is referring to a civil penalty and not disgorgement. Reply ISO Grossman Mot. 6, 7.

[2] Notably, Grossman concedes this point later in his Opposition. Grossman Opp'n 8 (stating ". . . *Liu* did hold that the Commission can continue to seek disgorgement from wrongdoers").

*SEC v. Blackburn*, No. CV 15-2451, 2020 WL 10787527, at *3 (E.D. La. Nov. 3, 2020) (stating *Liu* "did not create a rule requiring all disgorged funds be returned to investors or that a disgorgement award be limited to those funds that could be returned to investors"). Further, *Liu* stated that "lower courts are well equipped to evaluate the feasibility of returning funds to victims of fraud." *Liu*, 140 S. Ct. at 1949 n.5. Here, the SEC has provided a declaration detailing the data and methods it typically uses to "identify the parties on each side of a transaction." Decl. of Joseph Darragh ISO Grossman Mot. ¶ 4, ECF No. 83-2. Grossman has failed to show that it is improper for the SEC to seek disgorgement in this instance.[3]

Grossman has not provided any evidence to show that the SEC's disgorgement figure is an unreasonable approximation. *Platforms Wireless*, 617 F.3d at 1096 (quoting *First City Fin.*, 890 F.2d at 1232). The Court thus **ORDERS** Grossman to disgorge $289,078.74 in net profits and $49,515.71 in prejudgment interest.

        ii.    <u>Civil Penalty</u>

The SEC seeks a third-tier civil penalty against Grossman. Grossman Mot. 10–13. The SEC argues that "Grossman recklessly disregarded" registration requirements for fifteen months and "created a significant risk of substantial losses to the solicited investors who purchased the stock at prices artificially inflated by the matched-trading scheme." Grossman Mot. 12. The SEC also argues that the *Murphy* factors support a third-tier civil penalty for the following reasons: Grossman's violations were "egregious;" his violations continued for fifteen months; the "matched trading" scheme is a sophisticated scheme; Grossman eventually managed one of the boiler rooms; Grossman has not acknowledged his violations; Grossman has not made any assurances

---

[3] Grossman also makes numerous undeveloped arguments throughout his Opposition. It is not the role of the Court to make parties' arguments for them. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003); *see also Hibbs v. HDM Dep't of Human Res.*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (declining to address an "argument . . . too undeveloped to be capable of assessment").

about avoiding future violations; and Grossman has not complied with Court orders and deadlines. *Id*. at 12, 13. In response, Grossman argues that he should either receive no penalty or just a first-tier penalty. Grossman Opp'n 10. Grossman further argues a third-tier civil penalty is inappropriate for the following reasons: he was not charged with a scienter-based violation; he admitted to the SEC that he did not have a license; he cooperated with the SEC's investigation; he was only a "worker bee" at the boiler room; the failure to comply with Court deadlines is his lawyer's fault; he is elderly and cannot afford to pay any disgorgement, interest, or penalty; and a penalty would limit his ability to obtain "future employment that may require a license." *Id*. at 10.

The Court finds that a third-tier civil penalty is warranted under both the Exchange Act and the *Murphy* factors. Grossman recklessly violated securities laws for fifteen months and "created a significant risk of substantial losses" to various investors who purchased stocks. 15 U.S.C. § 78u(d)(3)(B)(iii)(aa), (bb). Grossman still disputes his full role in the scheme by arguing he was merely a "worker bee" despite consenting to allegations in the Complaint that he was a manager of one of the boiler rooms. *See* Grossman Opp'n 2, 11 (calling Grossman a "worker bee" and attempting to minimize his role as a manager); *but see* Compl. ¶¶ 13, 21, 22, 45 (describing Grossman as a manager). Though Grossman may seek "future employment that may require a license," he has not assured the Court or the SEC that he will refrain from future federal securities law violations. Grossman Opp'n 10. Grossman does not explain how his participation in the investigation warrants against assigning a third-tier civil penalty. Finally, Grossman fails to provide the Court with any evidence about his inability to pay a penalty. The Court thus assigns Grossman a third-tier civil penalty of $195,047.

Based on the above, the Court **GRANTS** the SEC's Motion as it pertains to the disgorgement of $289,078.74, $49,515.71 in prejudgment interest, and a third-tier civil penalty in the amount of $195,047. [4]

---

[4] Grossman asks that if the Court awards any disgorgement, prejudgment interest, or a

**B. Stephen Scott Moleski**

      i.      <u>Disgorgement and Prejudgment Interest</u>

The SEC seeks disgorgement of $206,524.57 in net profits Moleski received and $35,375.17 in prejudgment interest. Decl. of James J. Thibodeau ISO Moleski Mot. ¶¶ 5–11, ECF No. 79-4; *see also* Moleski Mot. 9–13. Moleski does not dispute the $206,524.57 calculation or the prejudgment interest calculation. Moleski Opp'n 3. Instead, Moleski makes the same arguments as Grossman. Moleski argues that disgorgement is improper for the following reasons: the SEC has not shown a loss to any victim; the SEC has not shown that profits will be returned to investors or victims; the SEC can only seek "profits that are returned to victims;" disgorgement does not compensate victims because the SEC "usually does not return disgorged funds to the victims;" and the SEC's Proposed Judgment states the SEC is seeking a penalty. Moleski Opp'n 3, 4.

The Court already addressed Moleski's arguments.[5] *Supra* (III)(A)(i). And again, the SEC provided a declaration detailing the data and methods it typically uses to "identify the parties on each side of a transaction." Decl. of Joseph Darragh ISO Moleski Mot. ¶ 4, ECF No. 84-2. Further, the SEC provided evidence about how it calculated Moleski's net profits. Decl. of James J. Thibodeau ISO Moleski Mot. ¶¶ 5–10, ECF No. 79-4. Moleski has not provided any evidence to show that the SEC's disgorgement figure is an unreasonable approximation. *Platforms Wireless*, 617 F.3d at 1096 (quoting *First City Fin.,* 890 F.2d at 1232). As such, the Court **ORDERS** Moleski to disgorge $206,524.57 and $35,375.17 in prejudgment interest.

---

civil penalty, he "be permitted to file a confidential sworn disclosure statement showing his assets, liabilities, income, or other funds received and expenses or other payments made to determine whether the amount of disgorgement, interest or a penalty is in the public interest." Grossman' Opp'n 12. The Court **DENIES** this request.

[5] Like Grossman, Moleski argues the SEC's Proposed Judgment states the disgorgement is a penalty. Moleski Opp'n 4. However, the portion of the Proposed Judgment Moleski cites to is referring to civil penalties, not disgorgement. Reply 5.

ii. Civil Penalty

The SEC argues that the Court should assign a third-tier civil penalty for the following reasons: Moleski "solicited thousands of investors to invest in a fraudulent matched-trading scheme" over the course of three years with "reckless disregard" of the registration requirements; Moleski was both a solicitor and a manager; Moleski "created a significant risk of substantial losses to the investors;" Moleski committed "egregious" federal securities law violations; Moleski has not acknowledged his violations; and it is possible Moleski will commit future violations. Moleski Mot. 9–12. Moleski argues that a third-tier civil penalty is not warranted for the following reasons: he only made calls to solicit investors; he did not admit that he acted with a reckless disregard of the registration requirements; he was just an employee; his conduct was "unintentional by nature" and not intended to deceive investors; and he did not grow the trading program or have control over Wolfson's intent in how he ran the boiler rooms. Moleski Opp'n 4, 5. Moleski asks the Court to either refuse to assign a civil penalty or only assign a first-tier civil penalty. Moleski Mot. 5.

The Court finds that a third-tier penalty is warranted under both the Exchange Act and the *Murphy* factors. Moleski recklessly disregarded registration requirements for three years and "created a significant risk of substantial loss[]" to various investors. 15 U.S.C. § 78u(d)(3)(B)(iii)(aa), (bb). Moleski also has not recognized the wrongful nature of his conduct. He argues that he was merely an "employee" despite the Complaint's allegations that he managed one of the boiler rooms. *See* Moleski Opp'n 2 (stating Moleski was only an employee); *but see* Compl. ¶¶ 14, 26, 27, 46 (stating Moleski was a manager). Moleski has not reassured the SEC or the Court that he will avoid future federal securities law violations. The Court thus assigns Moleski a third-tier civil penalty of $195,047.

Based on the above, the Court **GRANTS** the SEC's Motion as it pertains to the disgorgement of $206,524.57 in net profits Moleski received, $35,375.17 in prejudgment interest, and a third-tier civil penalty in the amount of $195,047.

**C. David Alan Wolfson**

    i. <u>Disgorgement and Prejudgment Interest</u>

The SEC seeks $2,490,555.07 in disgorgement and $426,602.09 in prejudgment interest from Wolfson. Decl. of James J. Thibodeau ISO Wolfson Mot. ¶¶ 5–14 ("Thibodeau Decl. ISO Wolfson Mot."), ECF No. 80-4; *see also* Wolfson Mot. 9–12. To calculate the reasonable approximation of disgorgement, the SEC issued subpoenas on multiple banks and reviewed bank records, "account statements, account opening documents, signature cards, wire transfers, deposit slips and copies of items deposited, checks, withdrawal slips, and bank account transfers." Thibodeau Decl. ISO Wolfson Mot. ¶ 4. The SEC subtracted certain business expenses from Wolfson's gross commissions. *Id.* ¶ 13. Wolfson has not filed an opposition and thus has not has not provided any evidence showing that the SEC's disgorgement figure is an unreasonable approximation. *Platforms Wireless*, 617 F.3d at 1096 (quoting *First City Fin.,* 890 F.2d at 1232). The Court **ORDERS** Wolfson to disgorge $2,490,555.07 and $426,602.09 in prejudgment interest.

    ii. <u>Civil Penalty</u>

The SEC seeks a third-tier civil penalty. Wolfson Mot. 9–12. The SEC argues that the Court should issue a third-tier civil penalty for the following reasons: Wolfson committed "egregious" federal securities law violations for almost four years; Wolfson cannot contest that he violated federal securities laws "knowingly or with severe recklessness;" Wolfson was the "mastermind" behind the boiler rooms and operated at least four boiler rooms while managing over thirty employees; Wolfson has not acknowledged the wrongfulness of his conduct; and Wolfson has not provided any assurance that he will avoid future violations. Wolfson Mot. 9–12. The Court assigns a civil penalty of $195,047.

Based on the above, the Court **GRANTS** the SEC's Motion as it pertains to the disgorgement of $2,490,555.07, $426,602.09 in prejudgment interest, and a third-tier civil penalty in the amount of $195,047.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the SEC's Motions and will issue separate judgments for all three Defendants.

**IT IS SO ORDERED.**

Dated: October 7, 2021

*Mark C. Scarsi*

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE